The next case is in re the Estate of Susan K. Batts for the appellate Mr. Kempsey, for the appellate Mr. Lee, you may proceed. Please the court, counsel. The issue in this case is whether or not a trial on a forcible entry detainer complaint in which the estate brought a complaint for eviction of the deceased spouse from the former male residence, whether or not the judgment in that case, granting the estate eviction of the ex-spouse, acts as a collateral estoppel bar to the spouse litigating validity of an antinuptial agreement in the probate case, and whether or not he can participate in the probate case and make a claim for a spouse's share of the estate within the probate case. This case, this is the second time this case has been before this court. The first time the issue was whether or not the trial court erred in granting the motion, or the entry of the forcible entry detainer complaint, and whether or not collateral estoppel barred Mr. O'Brien from contesting the validity of the antinuptial agreement in the probate case. The arguments that were made at that time were virtually identical to the arguments that we've made today, except that the court ruled on one of those issues and not the other. The doctrine of collateral estoppel is well established. The elements that must be met in order to apply the doctrine of collateral estoppel are that the issues decided in the prior litigation must be identical to the issues presented in the suit in question, that there be a final judgment on the merits of the prior adjudication, and that the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. The third element has never been in dispute. The last time this case was before this court, the first two elements of the doctrine of collateral estoppel were in dispute, and at that time this court ruled that there was not a final judgment on the forcible entry detainer complaint, because that judgment likewise was before this court on appeal. So the court remanded this case to the trial court after it found that there was at that point now a final judgment on the merits in the forcible entry detainer complaint. So we're back before this court again arguing that the issues that were decided in the forcible entry detainer complaint are not identical to the issues that might be litigated in the probate case as they relate to the enforceability of the antinuptial agreement. The requirements for a valid antinuptial agreement are now codified in the state of Illinois and are set forth in the Illinois Uniform Premarital Agreement Act. The first requirement is in Section 3 of that act, which indicates that a premarital agreement must be in writing and signed by both parties. It's enforceable without consideration. And it would be our position that that really is the only issue that was decided at the trial on the complaint for forcible entry detainer is whether or not that agreement was signed by both of the parties. There are additional situations in which an antinuptial agreement would be unenforceable. And those are set forth in Section 7 of the Uniform Premarital Agreement Act. And there's essentially two situations set forth in Section 7 in which an agreement would be unenforceable. And that is, first off, that the party did not execute the agreement voluntarily. And it certainly would be our position that the only issue that was decided in the forcible entry detainer complaint or case at trial was whether or not this agreement was executed by the parties. There was no evidence about whether or not this was voluntary or not. And the second time in which Section 7 indicates that an antinuptial agreement would not be enforced is if the agreement was unconscionable. And it provides a specific test that the court is to decide whether or not an agreement is unconscionable. It indicates that unconscionability of a premarital agreement is to be decided by the court as a matter of law. And so the test that the court is supposed to apply when determining if an agreement is unconscionable is whether or not if a party does not provide a fair and reasonable disclosure of the property or financial obligations of the other party, we believe that that's still an issue that could be litigated within the probate case as far as the validity of the antinuptial agreement. The second test that a party must meet to defeat the enforceability of an antinuptial agreement is that a party did not voluntarily expressly waive in writing any right to disclosure of the property or financial obligations of the other party beyond disclosures provided. And the third element that must be met to prove unconscionability is that a party did not have or reasonably could have had inadequate knowledge of the party or financial obligations of the other party. We believe that the first two elements of the unconscionability test are certainly substantial issues in this case. And if the court looks at the antinuptial agreement that was presented both at the trial on the complaint for forcible entry detainer and within the probate case, the very first page of that agreement indicates that the parties are not attaching a detailed listing of their respective property hereto but have each attached a general list of such property and intend that all property owned by either of them individually as of the date of its execution or going forward remain that person's property. If you look at the agreement, there is no even general list of property that each person had coming into the marriage. There was no disclosure of even the general list that each party was keeping as their property in the event that this prenuptial agreement was to be enforced. And so that certainly calls into question both the first and second element of the test of unconscionability under the Uniform Prenuptial Agreement Act because clearly there is no disclosure here. The agreement does not indicate that either party is waiving any requirement of at least a general disclosure of the other person's property or assets. So the first two elements of the test to prove unconscionability are certainly in question in this case. And obviously there was no evidence at the trial in the forceful entry detainer complaint about whether or not Mr. O'Brien did have or reasonably could have had knowledge of his wife's assets coming into the marriage. So I believe there are valid defenses under the Illinois Uniform Prenuptial Agreement Act that could be raised within the probate case to enforcement of the antinuptial agreement If the element of unconscionability is proven within the probate case or if Mr. O'Brien can demonstrate that this agreement was not voluntarily entered into, then the agreement is not valid and Mr. O'Brien would be entitled to a spouse's share of the estate. Did Ms. O'Brien have substantial estate above and beyond the real estate that she purchased? I think that's the most substantial asset. There were some bank accounts, I believe, but the total value of the estate I believe was less than $100,000. And of that $100,000, how much would the house be worth? I believe the house was worth about $50,000 or $60,000. So the issue then becomes whether or not the issue decided in the trial in the forceful entry detainer complaint is identical to the issues that may be raised in the probate case going to their unconscionability or voluntariness of this agreement. And how does the court determine if those issues are identical? Well, the case law says that if there's any question about whether or not those issues are identical, the trial court should err on the side of not applying the doctrine of collateral estoppel. If there's any issue about whether or not the issues decided in the first litigation are identical to the issues in the second litigation, the court simply shouldn't apply that doctrine. The court should allow a party to have their day in court on the second litigation if there's any question about whether or not the issues are identical. I think if you look at the record, specifically the transcript of the trial on the complaint for forceful entry detainer, it's clear that the issue of voluntariness of the parties signed this agreement, the issue of unconscionability, were not even raised at the trial in the complaint for forceful entry detainer. The only issue that was raised at the trial in the complaint for forceful entry detainer was whether or not the antinuptial agreement was signed by both of those parties. The record is completely devoid of any evidence relating to any other issue relating to the enforceability of the antinuptial agreement except for whether or not that agreement was signed. And you can look at the testimony of Lewis O'Brien. He was pro se at the trial in the complaint for forceful entry detainer. And the only testimony that he gave relevant to the antinuptial agreement was that he didn't sign that. He thinks he signed some other agreement relating to an agreement to make a will by Mrs. O'Brien that she would provide for him as will, but he denied that he signed that antinuptial agreement. He attempted to present reports from a handwriting expert who had compared the signatures on the antinuptial agreement with known samples of the party's signatures to say that these were, in fact, forgeries that appeared on the antinuptial agreement. The trial court correctly ruled that that was hearsay evidence and didn't allow that evidence in, but that's a further indication that that was the only issue that Mr. O'Brien raised at the trial in the complaint for forceful entry detainer was the fact that this was not my signature. This was not my wife's signature. These are forgeries on this agreement. The only substantial evidence presented by the state at the trial on the complaint for forceful entry detainer was testimony from Mr. Lee's assistant who witnessed the signing of the agreement, who said, I saw Mr. O'Brien sign the antinuptial agreement. She said, I saw Mrs. O'Brien sign the antinuptial agreement. That was the extent of her testimony. So clearly the only issue that was litigated at the hearing of the trial on the complaint for forceful entry detainer was whether or not this agreement was in fact signed. And I think another indication of the issue that was actually litigated at the trial on the complaint for forceful entry detainer is to look at the trial court's ruling and their findings of fact at the conclusion of the trial, and I think that's conclusive on the only issue that was litigated at that trial. And the trial court at the conclusion of the trial said, Mr. O'Brien, there's two things going on here. Forceful entry detainer is one action, and maybe you didn't have Mr. Baggett, who was the handwriting expert that Mr. O'Brien had the written reports from, here today for that, but that doesn't mean you still may not win in the estate and wind up with a third of the estate. So you still have the opportunity with Mr. Baggett on that. If you win on that, you get to renounce the will and get a third of the estate. It doesn't mean you get the house, do you understand? So the court at that point says, you know, you didn't have all your evidence here, but that doesn't mean you're not going to be able to raise this issue in the probate case. Then the court went on to say, the court's going to find the petitioner met the burden of proof. The court would specifically note a prenuptial agreement or antinuptial agreement signed and notarized by the testimony of Marta Slaughter, and that's Mr. Lee's assistant, who came to court and testified about the execution of the agreement, which was almost wholly undisputed. Mr. O'Brien testifies and denies this is the document signed, and he talked about another document not introduced in the court, some suggestion of a forgery. The court, not even considering the report of the forgers, did compare signatures on its own. He's obviously not a forgery expert, but based upon the court's own comparison of signatures, the court's lay opinion would be that if this is a forgery, it's a master forger. Unbelievably highly skilled in copying the signatures. That's the extent of the court's ruling. The court didn't make any other findings of fact. The court didn't make a finding as to whether or not the agreement was unconscionable because there had not been full disclosure to the other party of their income and assets. And I think that, again, is conclusive that the only issue that was litigated at the trial, the complaint for forcible entry and detainer, was whether or not the agreement was signed. That leaves open any other claims that defeat the enforceability of the antinuptial agreement within the probate case. So is the question whether it was litigated or could have been litigated? Well, on the issue of collateral estoppel, it doesn't matter whether or not it could have been litigated. If the estate was trying to apply the doctrine of res judicata, that applies to issues that not only were litigated at the prior proceeding, but could have been litigated. And that's claim preclusion under res judicata. Collateral estoppel is issue preclusion, and that's much more limited than res judicata in that it only applies to issues that are actually litigated. And that's the argument that the estate makes on this appeal, is that, well, Mr. O'Brien, who was pro se at the trial on the complaint for forcible entry and detainer, he could have raised these issues at that time. He chose not to raise those issues. When dealing with the issue of collateral estoppel, that is completely irrelevant. It doesn't matter whether or not he could have raised those issues or not. For collateral estoppel, it only applies to issues that are actually raised. And if the issue of unconscionability, voluntariness of the agreement was not raised at the prior litigation, then those are still issues that could be adjudicated within the probate case and could be defenses to the enforcement of the antinuptial agreement. And if you look at the estate's brief, they can't point to any single reference in the record from the trial on the complaint for forcible entry and detainer where any issue other than whether or not this agreement was signed was raised. The estate argues that, well, he could have raised those issues, but when you're talking about the issue of applying the doctrine of collateral estoppel, that has absolutely no relevance or bearing on the issue of collateral estoppel. If the issue was not raised at the trial court on the complaint for forcible entry and detainer, it can't serve as a basis for applying the doctrine of collateral estoppel, especially offensively to prevent Mr. O'Brien from having his day in court on these issues that could affect the enforceability of the antinuptial agreement. Those are issues that he should be able to raise within the probate case because they certainly weren't litigated on the complaint for forcible entry and detainer. The estate, for the first time on appeal, also raises the issue of whether or not this was an affirmative defense that Mr. O'Brien should have raised at the trial court level. That's not an issue that was ever discussed at the trial court. It was not an issue that the estate raised at the trial court. I believe it's not an affirmative defense because this is a statute that the legislature enacted. If the legislature had intended that unconscionability, lack of voluntariness of an antinuptial agreement was an affirmative defense that needed to be affirmatively pled by a party, they would have indicated in this statute, specifically Section 7, that this is an affirmative defense that needs to be affirmatively pled by a party seeking to avoid the enforcement of an antinuptial agreement. It's not in the statute anywhere. But again, that's not an issue that was ever raised at the trial court or was even addressed by the trial court. The only thing the trial court found this time around was that the issues that were litigated on the complaint for forcible entry and detainer are identical to the issues that would be raised by Mr. O'Brien in the probate case. And I think a clear reading of the transcript of the testimony from the trial that the complaint for forcible entry and detainer shows that that simply is not true. I believe the trial court also erred in not exercising its discretion to find that it would be fundamentally unfair to apply the doctrine of collateral estoppel within the probate proceedings, and there are several reasons for that. First off, as I previously mentioned, at the trial, the complaint for forcible entry and detainer, Mr. O'Brien did not have an attorney. He obviously didn't know that simply having reports from handwriting experts are not admissible, that that's hearsay, that you need to bring the actual handwriting expert into court to have them testify about their conclusions. He was at a significant disadvantage in that case. He walked into the trial on the complaint for forcible entry and detainer believing that the only issue that would be litigated was whether or not he would be allowed to continue to reside in the home that he had no, you know, he's not entitled to that home, whether he'd be able to continue to reside in the home that he shared with his ex-wife before she died, and the end result is that the way the trial court applied the doctrine of collateral estoppel, that he walked into court thinking that that's the only issue that's going to be litigated, and he ends up waiving all of his right to even contest any part of the anti-nuptial agreement. He gives up his right to renounce the will and try to claim his spouse's share of the estate, and that's certainly not what he would have thought would have happened, simply litigating whether or not he can stay in a home that he really had no ownership interest in and was owned solely by his wife. So I think the trial court also erred in applying the doctrine of collateral estoppel under the circumstances. I think the much fairer way to do this and the much more just way to do this is to allow Mr. O'Brien to have his day in court, to have him be able to raise any defenses to the enforcement of the anti-nuptial agreement within the probate case when he's represented by counsel, and counsel has the resources to be able to bring the handwriting experts into court. So our position would be that all issues should be able to be litigated within the probate case as far as the validity or the enforcement of the anti-nuptial agreement. But if the court feels that that is not the case, I think the only issue that would be barred by the trial on the complaint for forcible entry detainer would be whether or not Mr. O'Brien and his wife actually signed that agreement, because that's the only issue that was litigated at the trial on the complaint for forcible entry detainer. So if this court believes that the doctrine of collateral estoppel should apply, that's the only issue that Mr. O'Brien should be prohibited from raising within the probate case to contest the validity of the anti-nuptial agreement, but all the other issues should be on the table because none of those other issues were litigated within the trial on the complaint for forcible entry detainer. Thank you. You'll have additional time for rebuttal. May it please the court, Mr. Dempsey. Your Honor, as Mr. Dempsey indicated, this court has heard this case once before, and as Mr. Dempsey indicated, I think most of the matters that are before the court now were presented earlier and argued to the court earlier in the earlier appeal. What I would say to the court today, which is perhaps stating what I've said in my brief a little differently, is it seems clear that in both the probate matter that's pending in Douglas County involving Mrs. Batts' estate and in the forcible entry and detainer case that was heard earlier, which involved both of these parties, the central matter in both of those cases is the validity of the prenuptial agreement the parties signed. In the probate matter, Mr. O'Brien as a spouse would normally have a right to renounce the will. He'd have the right to request a surviving spouse's award. He'd have the right to ask that the case be heard under supervised administration. He would have a number of rights as a surviving spouse. Those are only altered by the existence of a valid prenuptial agreement in this case. Likewise, in the forcible entry case, Mr. O'Brien as the surviving spouse was residing with his deceased wife in the marital residence in Tuscola. Under the probate act, he would have a right to continue to live in that residence during the administration of the estate, and the estate would not have a right to possession of the property as normally would be the case due to his possession as an heir or surviving spouse. That was only altered by the validity of the prenuptial agreement. I think to say the only thing that the trial court decided in the forcible entry and detainer case was that the prenuptial agreement was signed by the parties misses the point, if you will. The trial court had to find that a valid prenuptial agreement existed in order to grant possession of that property to the estate, which the court did. How do you explain the court's comments? Well, your honor, frankly, I can't. I don't know why the judge said what he did. Those things were said after the fact. Frankly, my honest opinion is that I think as often times happens today in our trial courts, many people now appear pro se. I think wrongly thinking that by doing a little research on the internet, they can be as capable in court as an attorney who has many years of training and experience. And when our judges, our trial judges, see that and they make a ruling against those parties, then sometimes there's a tendency, I think, for the trial judge to want to try to soften the blow a little bit, to make it not seem so harsh. And I would say that it's my feeling that, at least in part, that may have been the reason that Judge Carroll made the comments he did that day, because Mr. O'Brien was there pro se and he wanted to perhaps not make it seem like a harsh result to him. So otherwise, I can't account for that, your honor. There's no reason why he would have made those comments that I can see. Anyway, as I was saying, the validity of the prenuptial agreement, that had to be a matter that was determined by the court in the forcible entry and detainer case in order to award possession to the estate. That being said, that very same issue is the issue that would be before the court in the probate case. The validity of the agreement has to be determined in order for the trial court to determine that Mr. O'Brien would not have rights in the estate as a surviving spouse, because that is the thing that would alter his rights in the probate matter. So I think that was decided. That's the same issue that would be facing the court in the probate case. There is an identity of issues here. These other matters that the appellant is talking about are various defenses that could have been presented to the question of the validity of the agreement. Those clearly, any or all of those or other defenses, if there were any, could have been presented in the forcible entry and detainer case as easily as they could be presented in the probate case. So I think that Mr. O'Brien has, in fact, had his day in court. He's had that opportunity to present whatever evidence or theories he wanted to present to the court. He presented what he wanted to present. It didn't include all these things. And I think now to give him a second opportunity would go against the doctrine of collateral estoppel. He's had his opportunity, and he's exercised it in the way he wanted to, and to allow him a second chance is what the doctrine of collateral estoppel was designed to prevent. I would note Mr. Dempsey referred to the execution of the document. The document here, the prenuptial agreement, was an acknowledged document. So in this case, the parties came to my office. They signed the document in front of my secretary, who was notary public. She notarized the document, indicating that they appeared in front of her, signed the document. So I think there's no question that the document was properly executed. The proof at the forcible entry and detainer trial I would submit is the proof that would normally be made to prove up the document. The foundation was laid to show the document was genuine, was valid. That was all that was required under the pleadings and the status of the case. Mr. Dempsey argues that these other matters weren't presented to the court. There was no evidence presented. Well, that was because none of those issues were raised in the forcible entry and detainer case. Voluntariness, unconscionability, those items would have been things that Mr. O'Brien would have been required to raise as issues to challenge the validity of the agreement. And those things were not done in the trial court. So I would submit to your honors that Mr. O'Brien has had his day in court. And we would ask this honorable court to affirm the decision of the trial court. Thank you. Thank you. Hello? I think Mr. Lee really hit the nail on the head when he said these were issues that could have been raised on the complaint for forcible entry and detainer and simply weren't. That gets to the very nature of collateral estoppel. If the issue is not raised, it certainly can't bar a party from simply raising those issues and subsequent issues. That's the very essence of collateral estoppel. And I think that essentially leads this court to believe that the only conclusion is that there are additional issues related to the enforceability of the international agreement that should be able to be raised by Mr. O'Brien in the probate case. And there's really two separate issues. Mr. Lee argues that clearly this is a valid agreement because we presented evidence that both parties signed it. It was acknowledged in front of my assistant who then notarized the agreement. But the Uniform Prenuptial Agreement Act acknowledges that you can have a situation where you have a valid agreement that's signed by both parties and yet is unenforceable. Those are two separate issues under the statute. The valid agreement, the only requirement is that it be signed by both parties, and there's no requirement for any consideration. That's one issue. The enforceability of a validly signed agreement is a completely separate issue, and that's covered under Section 7 of the Act that lays out two specific situations where an agreement that has been signed by the parties may be unenforceable. And whether or not it's a valid agreement because it was signed is one issue. And even if this court believes that that was the issue that was decided at the trial on the complaint for forcible entry detainer, that in any way does not preclude Mr. O'Brien from contesting the enforceability of the international agreement under either of the two situations set forth in Chapter 7. Those are two completely separate issues. So, again, even if this court believes that this is a valid antenuptial agreement because it was signed by both parties and it was in writing, that does not in any way prohibit him from later within the probate case attempting to present evidence to show to the trial court that this agreement is unenforceable under Section 7 of the Act. So, again, I think it's clear that the issue of the enforceability of this agreement simply was not presented, was not litigated at the trial on the complaint for forcible entry detainer. And as such, the trial court erred in applying the doctrine to prohibit Mr. O'Brien from being able to raise issues relating to enforceability. Counsel, did you raise all those defenses to the prenuptial agreement in front of Judge Carroll? Well, we didn't get that far because there was the motion. First off, there was a motion. There was no issue relating to whether or not as a matter of law those were issues that could be decided by the court. So we never got to that point because the first time this case went up on appeal, there was a motion for judgment on the pleadings that was filed by the estate before we even got to raise those issues. The second time, again, there was a motion for summary judgment that was filed before those issues were raised. Well, how do you resist a motion for summary judgment? Because the doctrine of collateral estoppel would not bar him from raising these particular issues relating to enforceability because these were not raised within the forcible entry detainer complaint. Well, except that the summary judgment presumes that the court found it enforceable. So a defense or a counter-argument to granting summary judgment is, hey, wait a minute. There are issues that could be raised. So if a defendant doesn't do that because he's pro se, do you get a pass? No, but on the probate case, we did raise the issue that there was not a disclosure to the parties' assets or income as was required under the Act because, again, the Antonov's agreement says they've attached a statement of their general assets and liabilities.  There's no waiver within the Antonov's agreement to say that the parties are waiving disclosure to one another of their assets. So those issues were raised. The court did not address in granting summary judgment for the estate whether or not the court found as a matter of law that that made the agreement unconscionable. The court simply found that collateral estoppel barred Mr. O'Brien from even raising those issues within the probate case because the issue of the signatures on the agreement was litigated within the complaint for forceful entry and detainer. Thank you. I'll take this matter under advisement and stand in recess until 1 o'clock. Cool.